# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

BMO BANK, N.A.,

                Plaintiff,

v.

K&M TRANSPORT LLC, et al.,

                Defendant.

Case No.  1:25-cv-01368-KES-SKO

**FINDINGS AND RECOMMENDATIONS TO GRANT IN PART MOTION FOR DEFAULT JUDGMENT AS TO COUNTS ONE & TWO**

(Doc. 14)

## I.    INTRODUCTION

On January 13, 2026, Plaintiff BMO Bank N.A. ("Plaintiff") filed a motion for default judgment (the "Motion") against Defendants K&M Transport LLC ("K&M Transport"), and Melvyn Martinez (collectively "Defendants"). (Doc. 14).  No opposition to the Motion was filed. The undersigned has reviewed the Motion and supporting documentation and determines that the matter is suitable for decision without oral argument pursuant to Local Rule 230(g).[1]  As such, the hearing on the motion set for February 18, 2026, will be vacated.

For the reasons set forth below, the undersigned will recommend that Plaintiff's motion for default judgment be granted in part, to the extent that Plaintiff requests that the Court enter default judgment against Defendants K&M Transport and Martinez as to counts one and two.  The undersigned further recommends denying the motion insofar as Plaintiff requests a default judgment as to counts three to five.

---

[1] This motion is referred to the undersigned by Local Rule 302(c)(19) for the entry of findings and recommendations. *See* 28 U.S.C. § 636(b)(1)(B).

## II.    FACTUAL BACKGROUND

On October 14, 2025, Plaintiff filed a complaint against Defendants alleging claims of breach of contract. (Doc. 1).  Defendants were served with the summons and complaint on October 15, 2025.  (Doc. 2).  Plaintiff filed a First Amended Complaint, (Doc. 6), in response to the Court's order to show cause regarding subject matter jurisdiction, (Doc. 4).  The summons was returned executed as to both Defendants on November 8, 2025.  (Docs. 8, 9).

Plaintiff's claims in the First Amended Complaint arise from several alleged written contracts in the form of loan and security agreements related to three vehicles: (1) Agreement 5001, (2) Agreement 8001, and (3) Agreement 0001" ("the Agreements"), in addition to a contract as to a "continuing guaranty."  (Doc. 6 ¶¶ 8–10; *see also id.* at 13–42[2]).  Plaintiff alleges that Defendant Martinez "executed in writing Continuing Guaranties" and was therefore indebted to Plaintiff for "all sums due under the Agreements. (*Id.* ¶¶ 12–13).  Plaintiff further alleges that pursuant to these agreements, Defendant K&M Transport, for their part, was required to make regular monthly payments. (*Id.* ¶ 17; *see also id.* at 9).  Additionally, Plaintiff alleges the Agreements provided for acceleration of the balance on the Agreements and payment in full in the event Defendants failed to make their required payments under the Agreements.  (*Id.* ¶¶ 17–18).  (Doc. Because Plaintiff alleges they perfected their first-priority security interest in the three vehicles, they contend they were entitled to recover those vehicles upon Defendants' non-payment. (*Id.* ¶¶ 15–16, 19).

Plaintiff alleges that after Defendant K&M Transport ceased making payments under each of the Agreements, Plaintiff accelerated and declared the entire remaining balances under the agreement as due on September 26, 2025, and now—in light of Defendant K&M Transport's non-payment—under the terms of the Agreement, Defendants owe Plaintiff the following sums:

1.    A principal balance of $41,149.72 under Agreement 5001;

2.    Late fees pursuant to the terms of Agreement 5001 in the amount of $507.40, plus

---

[2] The undersigned recommends the Court take judicial notice of the Agreements, as attached to the First Amended Complaint, (Doc. 6 at 13–38). *See United Specialty Ins. Co. v. Certain Underwriters at Lloyd's of London*, No. 18-CV-07504-SK, 2019 WL 7810813, at *2 (N.D. Cal. Mar. 19, 2019) ("The Court takes judicial notice of the [contract] because it is integral to the allegations presented in the Complaint and because neither party disputes its authenticity . . . .  In the context of breach of contract cases, '[j]udicial notice of contracts is proper when contracts are integral to the complaint and no party disputes the contracts' identity and accuracy.'" (quoting *Am. Zurich Ins. Co. v. Country Villa Serv. Corp.*, No. CV 14-3779 RSWL, 2014 WL 12588687, at *4 (C.D. Cal. Oct. 2, 2014))).

2

any costs associated with repossession[3];

3. Interest in the amount of $2,143.10 as of September 26, 2025, plus interest in the amount of 18% per annum (the acceleration rate) from September 27, 2025 through the date of judgment;

4. Attorney's fees associated with the costs of this litigation under the terms of Agreement 5001;

5. A principal balance of $71,396.01 under Agreement 8001;

6. Late fees pursuant to the terms of Agreement 8001 in the amount of $1,479.12, NSF charges of $50.00, plus any costs associated with repossession;

7. Interest in the amount of $3,697.02 as of September 26, 2025, plus interest in the amount of 18% per annum (the acceleration rate) from September 27, 2025 through the date of judgment;

8. Attorney's fees associated with the costs of this litigation under the terms of Agreement 8001;

9. A principal balance of $44,600.59 under Agreement 0001;

10. Late fees pursuant to the terms of Agreement 0001 in the amount of $446.85, NSF charges of $25.00, plus any costs associated with repossession;

11. Interest in the amount of $2,227.20 as of September 26, 2025, plus interest in the amount of 18% per annum (the acceleration rate) from September 27, 2025 through the date of judgment; and

12. Attorney's fees associated with the costs of this litigation under the terms of Agreement 0001.

(*Id.* ¶¶ 17–49).

Defendants were served with the First Amended Complaint on November 18, 2025. (Docs. 8, 9). Neither Defendant responded to the First Amended Complaint. (*See* Docket). Plaintiff

---

[3] The undersigned observes that while the First Amended Complaint seeks recovery of any charges associated with repossession per the terms of the Agreements, (*see* Doc. 6 ¶¶ 23, 29, 35), the Motion does not seek recovery of such amounts, (*see* Doc. 14). Therefore, the undersigned does not recommend awarding any sum associated with such charges under any of the agreements.

requested that the Clerk of Court enter default against Defendants on December 3, 2025 and default was entered that day.  (Docs. 10, 11, 12).  On January 14, 2026, Plaintiff filed a motion for default judgment against Defendants, which is currently pending before Court.  (Doc. 14).

### III.    DISCUSSION

**A.    Legal Standard**

Federal Rule of Civil Procedure 55(b) permits a court-ordered default judgment following the entry of default by the clerk of the court under Rule 55(a).  It is within the sole discretion of the court as to whether default judgment should be entered.  *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).  A defendant's default by itself does not entitle a plaintiff to a court-ordered judgment.  *See id.*  Instead, the Ninth Circuit has determined a court should consider seven discretionary factors, often referred to as the "*Eitel* factors," before rendering a decision on default judgment.  *See Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).  The *Eitel* factors include (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.  *See id.*

Once the court clerk enters a default, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages.  *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987).

**B.    Analysis**

    **1.    The *Eitel* Factors Weigh in Favor of Granting a Default Judgment**

        **a.    Possibility of Prejudice to Plaintiff**

The first *Eitel* factor requires a court to consider the possibility of prejudice to a plaintiff.  *See Eitel*, 782 F.2d at 1471.  The undersigned finds that if default judgment is not entered, Plaintiff will effectively be denied a remedy until Defendants participate and make an appearance in the litigation—which may not occur.  Denying Plaintiff a means of recourse is, by itself, sufficient to

meet the burden imposed by this factor. *See Bmo Bank N.A. v. Bring Transp. Inc.*, No. 1:24-CV-00809-KES-EPG, 2025 WL 2611852, at *3 (E.D. Cal. Sept. 10, 2025) ("If default judgment is not entered, Plaintiff will effectively be denied relief, as it is apparent that Defendants will not defend this action and the Complaint alleges that Defendants are in default of the unpaid amounts owed to Plaintiff under the terms of the agreement and corresponding guaranty."), *report and recommendation adopted sub nom. BMO Bank N.A. v. Bring Transp. Inc.*, No. 1:24-CV-00809-KES-EPG, 2025 WL 3004099 (E.D. Cal. Oct. 27, 2025). Therefore, the undersigned finds that Plaintiff would be prejudiced if the Court were to deny its motion and this factor weighs in favor of default judgment.

> **b.     Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint**

The next *Eitel* factor includes an evaluation of the merits of the substantive claims pleaded in the complaint and the general sufficiency of the complaint. *See Eitel*, 782 F.2d at 1471. In weighing these factors, courts evaluate whether the complaint is sufficient to state a claim that supports the relief sought. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978); *see also DIRECTV, Inc. v. Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) ("[A] defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").

Before evaluating the merits of the substantive claims and sufficiency of the First Amended Complaint, the undersigned notes that the parties' contract contains a choice of law provision for Illinois law. (*See* Doc. 6 at 17, 25, 34 ("Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within ·the State of Illinois and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Illinois (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment.")). Federal courts sitting in diversity generally apply the substantive law of the forum state. *E.g.*, *Nelson v. Int'l Paint Co.*, 716 F.2d 640, 643 (9th Cir. 1983). This includes the forum's choice-of-law rules, *id.*, and California law generally enforces contractual choice-of-law terms. *E.g.*, *Smith, Valentino & Smith, Inc. v. Superior Court*, 551 P.2d 1206 (Cal. 1976) (In Banc);

*Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1028 (9th Cir. 2016).  Therefore, the undersigned will apply Illinois law as to Plaintiff's contract claims.

Turning to Plaintiff's breach of contract claims—specifically count one against Defendant K&M Transport and count two against Defendant Martinez—the elements of breach of contract under Illinois law are "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff."  *Sherwood Commons Townhome Owners Ass'n, Inc. v. Dubois*, 148 N.E.3d 900, 912 (Ill. App. Ct. 2020) (quoting *Henderson-Smith & Assocs., Inc. v. Nahamani Fam. Serv. Ctr., Inc.*, 752 N.E.2d 33, 43 (Ill. App. Ct. 2001)).  The undersigned finds that Plaintiff has alleged sufficient facts for a breach of contract claim against Defendants.  As alleged in Plaintiff's First Amended Complaint, Plaintiff and Defendants agreed to certain terms contained in three loans and security agreements and the guaranty agreement that are alleged to be valid contracts, Plaintiff performed its obligations, Defendants failed to make required installment payments or the balance upon acceleration as they were obligated by the Agreements, and Plaintiff suffered damages as a result of the breach.  (*See* Doc. 6 ¶¶ 8–49).

The First Amended Complaint therefore sufficiently sets forth Plaintiff's claims for breach of contract against both Defendants, and the substantive allegations appear to have merit.  *See Bmo Bank N.A.*, 2025 WL 2611852, at *3; *Christofferson v. All Pure Pool Serv. of Cent. Cal., Inc.*, No. 118CV01370AWISAB, 2020 WL 3249323, at *14 (E.D. Cal. June 16, 2020), *report and recommendation adopted sub nom.* No. 118CV01370AWISAB, 2020 WL 3819413 (E.D. Cal. July 8, 2020).  The undersigned therefore finds that the second and third *Eitel* factors are satisfied as to the breach of contract claims and weigh in favor of default.  *See, e.g.*, *Rolex Watch U.S.A., Inc. v. Watch Empire LLC*, No. CV1309221SJOFFMX, 2015 WL 9690322, at *3 (C.D. Cal. Sept. 29, 2015) (stating that the second and third *Eitel* factors together "require that a plaintiff state a claim on which the plaintiff may recover" (quoting *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002))).

The undersigned notes that the First Amended Complaint requests injunctive relief related to Defendants' continued use of the vehicles operating as collateral under the Agreements.  (Doc. 6

6

¶¶ 50–56). Based on the representations in Plaintiff's motion in which Plaintiff represents having recovered each of the three vehicles at issue, (Doc. 14 at 7), the undersigned finds that Plaintiff's request for an injunction enjoining Defendants "from continuing to use the Vehicles," ordering Defendants "to advise Plaintiff of the location of the Vehicles," and ordering Defendants "to surrender the Vehicles to Plaintiff," (Doc. 6 ¶ 55), is now moot. Accordingly, the undersigned recommends denying Plaintiff's request for injunctive relief as requested in count three. The First Amended Complaint also includes count four, in which Plaintiff seeks specific performance as to the return of the vehicles as required under the Agreements (count four), (Doc. 6 ¶¶ 57–62), as well as count five for "claim and delivery," in which Plaintiff seeks a writ of possession, (*id.* ¶¶ 63–75). As set forth above, based on Plaintiff's representations, the undersigned recommends denying the relief requested in counts four and five as moot.

### c.    The Sum of Money at Stake in the Action

The fourth *Eitel* factor requires the court to consider the sum of money at stake. *See Eitel*, 782 F.2d at 1471. The undersigned acknowledges that "[d]efault judgment is disfavored when a large amount of money is involved or is unreasonable considering the defendant's actions." *See Moore v. Cisneros*, No. 1:12-CV-00188-LJO, 2012 WL 6523017, at *4 (E.D. Cal. Dec. 13, 2012). However, as will be discussed in detail below, Plaintiff requests a total of $182,965.04[4]—which includes the remaining principal of the loan amount, interest, costs, and fees. (*See* Doc. 14 at 14; Doc. 21 at 2). The undersigned finds this amount is not excessive as it is based upon Defendants' obligations under the terms of the Agreement.

Accordingly, the undersigned finds that the fourth *Eitel* factor weighs in favor of granting default judgment.

### d.    The Possibility of a Dispute Concerning the Material Facts

The fifth *Eitel* factor is whether there is a possibility of a dispute concerning the material facts. *See Eitel*, 782 F.2d at 1471–72. Regarding this factor, the undersigned finds that no genuine issues of material fact are likely to exist because the allegations in the complaint are taken as true,

---

[4] This amount has been adjusted based on Attorney Jennifer Witherell Crastz's supplemental declaration regarding requested attorney's fees. (*See* Doc. 21).

*Televideo Sys.*, 826 F.2d at 917–18, and Defendants have submitted nothing to contradict the well-pleaded allegations in the complaint. *See United Specialty Insurance Co. v. Saleh*, No. 1:16-cv-00632-DAD-MJS, 2016 WL 4434479, at *2 (E.D. Cal. Aug. 22, 2016) ("Inasmuch as default serves as an admission of Plaintiff's well-pled allegations of fact, it must be concluded that there is no dispute as to any material fact.") (internal citation omitted). Accordingly, the undersigned finds this factor favors entry of default judgment.

### e. Whether Default Was Due to Excusable Neglect

The sixth *Eitel* factor requires a court to evaluate whether the default of Defendants was due to excusable neglect. *See Eitel*, 782 F.2d at 1472. Defendants failed to file responsive pleadings or oppose Plaintiff's motion for default judgment. Therefore, the undersigned has no evidence before it to demonstrate Defendants' failure to participate in the litigation is due to excusable neglect. *See Protective Life Ins. Co. v. Phillips*, No. CIV S-08-0035 JAM EFB, 2008 WL 4104284, at *3 (E.D. Cal. Aug. 26, 2008) (stating that a defendant's "failure to respond cannot be deemed 'excusable neglect'"). Thus, the undersigned finds that this factor also weighs in favor of granting default judgment.

### f. Policy Favoring Decision on the Merits

The final *Eitel* factor requires a court to take into account the policy that default judgments are disfavored because "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, "the policy favoring decisions on the merits does not weigh against entering default judgment where, as here, the Defendants' failure to appear has made a decision on the merits impossible at this juncture." *Arroyo v. J.S.T. LLC*, No. 1:18-CV-01682-DAD-SAB, 2019 WL 4877573, at *11 (E.D. Cal. Oct. 3, 2019), *report and recommendation adopted*, 2020 WL 32322 (E.D. Cal. Jan. 2, 2020). Accordingly, the undersigned finds that the seventh *Eitel* factor does not preclude default judgment.

In sum, six of the *Eitel* factors weigh in favor of default judgment, while the seventh factor does not weigh in favor—but does not preclude or weigh against—default judgment. For these reasons, the undersigned recommends the Court grant in part Plaintiff's Motion for Default Judgment, (Doc. 23), to the extent Plaintiff requests that the Court enter default judgment against

8

Defendants K&M Transport and Martinez on Plaintiff's breach of contract claims, counts one and two.

### 2.      Terms of the Judgment and Proof of Relief

The undersigned next turns to the damages requested by Plaintiff. "A plaintiff seeking default judgment 'must . . . prove all damages sought in the complaint.'" *HICA Educ. Loan Corp. v. Warne*, No. 11-CV-04287-LHK, 2012 WL 1156402, at *4 (N.D. Cal. Apr. 6, 2012). Plaintiff's complaint seeks the unpaid principal, interest, various fees (including attorney's fees) and costs. (Doc. 6 ¶¶ 44, 49; *see also* Doc. 14 at 9–11, 14).

Under Federal Rule of Civil Procedure 54(c), "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). The First Amended Complaint seeks "judgment in its favor and against K&M [Transport and Martinez] in the amount due under the Agreements, the exact amount to be proven at or before trial, plus its attorneys' fees, costs, late fees and interest, together with such other and further relief as shall be just and equitable" (Doc. 6 ¶¶ 44, 49).

In determining the appropriate sum for a default judgment, a court may rely on the affidavits or documentary evidence submitted by a plaintiff or order an evidentiary hearing. *See* Fed. R. Civ. P. 55(b)(2); *Microsoft Corp. v. Nop*, 549 F.Supp.2d 1233, 1235 (E.D. Cal. 2008) ("Where damages are liquidated (*i.e.*, capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits), judgment by default may be entered without a damages hearing." (citation omitted)).

The Agreements entered by the parties provide the following relevant terms:

**SECURITY INTEREST.** Debtor hereby grants to Lender a first priority security interest in the Equipment to secure (a) payment of the Total Amount and all other obligations or Debtor to Lender under this Agreement, (b) the payment and performance of all other debts, liabilities and obligations of Debtor of every kind and character, whether now existing or hereafter arising, to Lender, whether under this Agreement or any other agreement, and (c) the payment and performance of all debts, liabilities and obligations of Debtor of *every* kind and character, whether now existing or hereafter arising, to each of Lender's Affiliates.

**RETURNED PAYMENTS.** If a check, draft or other remittance sent by Debtor or a Debit Transaction authorized by Debtor is returned unpaid or rejected for any reason other than the lack of a proper endorsement by Lender, the application of such payment to Debtor's Liabilities will be reversed and Debtor shall immediately pay

Lender the amount of such returned payment plus any delinquency charge accruing as the result of such reversal. Debtor shall further pay Lender any amount charged to Lender by any depositary institution because of such return and an additional handling charge in the amount of $25, or if applicable law limits or restricts the amount of such reimbursement and/or handling charge, the amounts chargeable under this provision will be limited and/or restricted in accordance with applicable law.

**EVENTS OF DEFAULT**. Time is of the essence. An event of default shall occur if: (a) Debtor fails to pay when due any amount owed by it to Lender or any Affiliate of Lender under this Agreement; (b) Debtor or a Guarantor fails to pay any Liabilities when due to Lender or any Affiliate of Lender or is otherwise in default under any other document, agreement or instrument . . .

**REMEDIES**. Upon the occurrence of an event of default, and at any time thereafter as long as the default continues, Lender may, at its option, with or without notice to Debtor (i) declare this Agreement to be in default, (ii) declare the indebtedness hereunder to be immediately due and payable, (iii) declare all other debts then owing by Debtor to Lender lo be immediately due and payable, and (iv) exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and any other applicable laws, including the right to require Debtor to assemble the Equipment and deliver it to Lender at a place to be designated by Lender and to enter any premises where the Equipment may be without judicial process and take possession thereof. Any property other than Equipment that is in or upon the Equipment at the time of repossession may be taken and held without liability. Any requirement that Lender give reasonable notice regarding the sale or other disposition of Equipment will be met if such notice is mailed to Debtor at its last known address at least ten days before such sale or other disposition. Lender may dispose of any Equipment at a public or private sale or at auction. Lender may buy at any sale and become the owner of the Equipment. Debtor agrees that Lender may bring legal proceedings to enforce the payment and performance of Debtor's obligations hereunder in any court in the State shown in Lender's address set forth herein, and service of process may be made upon Debtor by mailing a copy of the summons for Debtor at its address shown herein. Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by lender, and (b) all other legal expenses incurred by Lender. Debtor agrees that Debtor is liable for any deficiency remaining after any disposition or Equipment after default. Lender may sell the Equipment without giving any warranties as to the Equipment. Lender may disclaim any warranties of title, possession, quiet enjoyment, or the like. This procedure will not be considered to adversely affect the commercial reasonableness of any sale of the Equipment.

**ACCELERATION INTEREST.** Debtor agrees to pay Lender, upon acceleration of the above indebtedness, interest on all sums then owing hereunder at the rate of 1 1/2% per month if not prohibited by law, otherwise at the highest rate Debtor can legally obligate itself to pay or Lender can legally collect under applicable law.

**GOVERNING LAW / CHOICE OF VENUE.** Anything in this Agreement to the contrary notwithstanding, the transactions contemplated by this Agreement shall be deemed approved and entered into within the State of Illinois and all credit or other financial accommodations extended by Lender under this Agreement shall be deemed extended from and subject to the laws of the State of Illinois (without regard to the conflicts of law principles of such State) regardless of the location of Debtor or any of the Equipment. Any legal action or proceeding with respect to this Agreement or the transactions contemplated by this Agreement shall be brought exclusively in the

10

federal or state courts located in Cook County, Illinois, and Debtor accepts for itself and in respect of its property, generally and unconditionally, the jurisdiction of the aforesaid courts; *provided, however,* that nothing in this Agreement shall limit or restrict the right of Lender to commence any proceeding in the federal or state courts located in the state in which the Equipment is located to the extent Lender deems such proceeding necessary or advisable to exercise remedies available under this Agreement or to commence legal proceedings or otherwise proceed against Debtor in any other Jurisdiction. Lender and Debtor hereby irrevocably waive any objection, including any objection to the laying of venue or based on the grounds of forum non conveniens that any of them may now or hereafter have to the bringing of any such action or proceeding in such jurisdictions.

(Doc. 6 at 15–18, 23–25, 32–34).

The Agreements also include the following interest rates associated with each Agreement's corresponding payment schedules:

1.      Agreement 5001: 12.93% per annum, (*id.* at 14)

2.      Agreement 8001: 10.90% per annum, (*id.* at 22)

3.      Agreement 0001: 12.40% per annum, (*id.* at 31)

### a.      Damages

Both Plaintiff's complaint and motion for default judgment seek damages. (Doc. 6 ¶¶ 44, 49; *see also* Doc. 14 at 9–11, 14). Generally, "[t]he proper measure of damages for a breach of contract is the amount of money necessary to place the plaintiff in a position as if the contract had been performed." *In re Illinois Bell Tel. Link-Up II*, 994 N.E.2d 553, 558 (Ill. App. Ct. 2013). Moreover, while the Illinois Interest Act limits the annual interest rate on which a borrower and lender may agree at 9%, there is an exception allowing for borrowers and lenders to agree to any annual interest rates on business loans, *see* 815 Ill. Comp. Stat. 205/4(1) ("It is lawful to charge, contract for, and receive any rate or amount of interest or compensation . . . with respect to . . . any business loan to a business association or copartnership or to a person owning and operating a business as sole proprietor or to any persons owning and operating a business"). The undersigned finds the business loan exception applies here, and, therefore, the undersigned finds that the Agreements' term setting a 1.5% monthly interest rate (equivalent to an 18% annual interest rate) to all sums upon the acceleration of the indebtedness under the Agreement on September 26, 2025 is not contrary to Illinois law.

The following table illustrates the monetary relief sought in this case.

11

| Agreement | Description | Amount |
|---|---|---|
| Agreement 5001 | Principal | $41,149.72 |
| | Late Fees | $507.40 |
| | Pre-Acceleration Interest (at a rate of 12.93%) | $2,143.10 |
| | Post-Acceleration Interest (at a rate of 18%) | $20.57 per day |
| Agreement 8001 | Principal | $71,396.01 |
| | Late Fees & NSF Charges | $1,529.12 |
| | Pre-Acceleration Interest (at a rate of 10.90%) | $3,697.02 |
| | Post-Acceleration Interest (at a rate of 18%) | $35.70 per day |
| Agreement 0001 | Principal | $44,600.59 |
| | Late Fees & NSF Charges | $471.85 |
| | Pre-Acceleration Interest (at a rate of 12.40%) | $2,227.20 |
| | Post-Acceleration Interest (at a rate of 18%) | $22.30 per day |
| | **Total** | **$167,722.01** (plus daily interest rates) |

The undersigned will address the request for attorney's fees ($2,535.00)[5] and costs ($596.74) separately below.

The undersigned finds that Plaintiff has adequately identified the specific amount of damages requested and provided sufficient declarations and other documentation to meet its burden of establishing an amount of damages. The combined principal amount of $157,146.32, combined late fees and NSF charges of $2,508.37, pre-acceleration interest in the amount of $8,067.32, and post-acceleration interest at a rate of $78.57 per day after September 26, 2025, are all supported by the declaration of Whitney Oliver and the Agreements. (*See* Doc 6 at 14–38; Doc. 15). Accordingly, the undersigned recommends that Plaintiff's requests for the principal amount ($157,146.32), late fees and NSF charges ($2,508.37), pre-acceleration interest ($8,067.32), and post-acceleration interest at a rate of $78.57 per day after September 26, 2025 be granted.

### b.     Attorney's Fees

Plaintiff seeks attorney's fees in the amount of $2,530 for work performed at the hourly rate of $325 per hour for attorney Jennifer Witherell Crastz's time. (*See* Doc. 14 at 14; Doc. 16 at 4–5,

---

[5] The associated invoices provided as an offer of proof reflect a total amount of 7.8 hours, which at a rate of $325 per hour amounts to $2,535.00. However, the supplemental declaration, itself responding to the undersigned's order inviting Plaintiff to correct Attorney Crastz's original declaration that contained mathematical inconsistencies between the request for attorney's fees and the offer of proof, (*see* Doc. 20), again includes inaccurate math, (*see* Doc. 21 at 2 (stating the sum of $1,787.50 + $97.50 + $650 = $2,534.50 instead of $2,535)). In light of the offer of proof, the undersigned recommends proceeding based on the amount there reflected: $2,535.

12

9–13).  In support of the fee request, Plaintiff submits the declaration of Attorney Crastz.  (*See id.* at 4–5, 9–11).

In a diversity action, federal law governs procedural questions and state law governs substantive questions.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).  Because this is a diversity case and "state law on attorney's fees is substantive" for *Erie* purposes, for the same reasons cited above as to the application of Illinois law to Plaintiff's substantive claims, Illinois law applies in determining the substance of any attorney's fees.  *Alaska Rent-A-Car, Inc. v. Avis Budget Group, Inc.*, 738 F.3d 960, 973 (9th Cir. 2013); *see Nedlloyd Lines B.V. v. Superior Ct.*, 834 P.2d 1148, 1155 (Cal. 1992). ("For the reasons stated above, we hold a valid choice-of-law clause, which provides that a specified body of law "governs" the "agreement" between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized.").

Here, the Agreements provide for attorney's fees.  (*See* Doc. 6 at 16, 24, 33 ("Debtor shall also pay to Lender all expenses of retaking, holding, preparing for sale, selling and the like, including without limitation (a) the reasonable fees of any attorneys retained by lender, and (b) all other legal expenses incurred by Lender.")).  Under Illinois law, although contract provisions for awards of attorney's fees are permissible, only those fees which are reasonable are allowed, and the determination of reasonableness is left to the trial court's discretion.  *Kaiser v. MEPC Am. Props., Inc.*, 518 N.E.2d 424, 427 (Ill. App. Ct. 1987).  The burden is on the party seeking the fees to present the court with sufficient evidence from which it can determine the reasonableness of the fees.  *Id.* A party attempting to justify a fee must show more than a compilation of hours multiplied by a fixed hourly rate, or copies of the bills issued to the client, because this data, alone, does not provide sufficient information as to reasonableness.  *Id.*  A determination of reasonableness cannot be made based on conjecture or the opinion or conclusions of the attorney seeking the fees.  *Id.*  A fee petition must specify "the services performed, by whom they were performed, the time expended thereon and the hourly rate charged therefor."  *Id.*  The party seeking fees must present the court with "detailed records maintained during the course of litigation containing facts and computations upon which the charges are predicated."  *Id.* at 427–28.

13

The undersigned finds that the records provided by Plaintiff are adequately detailed and reflect the number of hours spent on this matter with corresponding descriptions of the work performed during those hours. (*See* Doc. 16 at 9–13); *see also Cont'l W. Ins. Co. v. Country Mut. Ins. Co.*, No. 3:17-CV-1231-NJR-GCS, 2020 WL 5441113, at *5 (S.D. Ill. Sept. 10, 2020) ("each entry included a description of the work performed, the attorney's name, the amount of time spent, and the hourly rate charged. That is all that is required under Illinois law"), *aff'd*, 3 F.4th 308 (7th Cir. 2021); *In re Marriage of Yelton*, 676 N.E.2d 993, 998 (Ill. App. Ct. 1997) ("Our review of the record reveals that the timesheets included a concise explanation of the work undertaken and services performed, as well as the name, amount of time, and hourly rate of the attorneys involved. Therefore, the trial court properly admitted them.").

In addition to a party's detailed records, in determining an award of attorney's fees, under Illinois law, the trial court should consider additional factors,

> such as the skill and standing of the attorneys, the nature of the case, the novelty and/or difficulty of the issues and work involved, the importance of the matter, the degree of responsibility required, the unusual and customary charges for comparable services, the benefit to the client [citation omitted], and whether there is a reasonable connection between the fees and the amount involved in the litigation.

*Kaiser*, 518 N.E.2d at 428.

With these principles in mind, Attorney Crastz's declaration states that she has been licensed to practice law in California since 1996 "working in the areas of complex business and commercial litigation for almost 30 years," (Doc. 16 at 3), and is a partner at the Law Offices of Hemar, Rousso & Heald, LLP, (*id.* at 2). This case also appears to be a relatively straightforward contract dispute in which Plaintiff achieved success early in the litigation. The requested rates of $325 for Attorney Crastz is in line with the hourly rates awarded in the Eastern District for comparable services. *See Bmo Bank N.A. v. Bring Transp. Inc*, 2025 WL 2611852, at *8. Upon review of the fee request and associated offer of proof, there is also a reasonable connection between the fees requested and the amount involved in the litigation. Accordingly, the undersigned recommends that the presiding district court judge approve the requested figure of $2,535 as Plaintiff's total recoverable attorney's fees for this matter.

<strong>c.      Litigation Expenses and Costs</strong>

14

Plaintiff also seeks a total of $596.74 in costs, which consists of the filing fee and service of process. (Doc. 16 at 5). Unlike the issue of attorney's fees, which are governed by state law, "the award of costs is governed by federal law under Rule 54(d)." *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 n.2 (9th Cir. 1987); *see, e.g.*, *United States v. Safeco Ins. Co. of Am.*, 116 F.3d 487, at *2 (9th Cir. 1997) ("As a general proposition, an award of costs is governed by federal law under Rule 54(d)." (citations omitted)); *United Cal. Bank v. THC Fin. Corp.*, 557 F.2d 1351, 1361 (9th Cir. 1977) (applying federal law as to costs and California state law on the issue of attorney's fees); *Bmo Harris Bank N.A. v. Singh*, Case No. 1:16-cv-00482-DAD-SAB, 2016 WL 5798841, at *14 (E.D. Cal. Oct. 4, 2016) ("In a diversity action, federal not state law controls the issue of costs." (citing *Aceves v. Allstate Ins. Co.*, 68 F.3d 1160, 1167 (9th Cir. 1995))); *Am. Boat Racing Ass'n v. Richards*, No. 2:14–cv–1909–KJM–KJN, 2015 WL 1320956, at *8 (E.D. Cal. Mar. 24, 2015) ("[F]ederal law governs the award of costs even in a diversity action." (citing *DCI Sols. Inc. v. Urban Outfitters, Inc.*, No. 10cv0369–IEG (BGS), 2012 WL 1409610, at *2 (S.D. Cal. Apr. 23, 2012))). 28 U.S.C. § 1920 "define[s] the full extent of a federal court's power to shift litigation costs absent express statutory authority." *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 579 (9th Cir. 2010) (citation omitted). The costs that are taxable under Section 1920 "are limited to relatively minor, incidental expenses," including "clerk fees, court reporter fees, expenses for printing and witnesses, expenses for exemplification and copies, docket fees, and compensation of court-appointed experts." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).

Plaintiff requests reimbursement in the amount of $596.74 for the following costs: (1) $405 for the filing of the complaint, (2) $140.24 spent on the service of process on Defendant K&M Transport, and (3) $51.50 spent on the service of process on Defendant Martinez. (Doc. 14 at; Doc. 16 at 5, 12). "[B]ecause federal law permits the court filing fee and service of process expenses to be recovered as costs," the undersigned recommends that Plaintiff be awarded the $596.74 in costs. *See Am. Boat Racing Ass'n v.*, 2015 WL 1320956, at *8; *see also, e.g.*, *Direct Connect Logistix, Inc. v. Road Kings Trucking Inc.*, Case No. 1:16-cv-01006-AWI-SKO, 2016 WL 6608924, at *10 (E.D. Cal. Nov. 9, 2016) ("The costs associated with filing this action and serving [the defendants] are properly recoverable by [the plaintiff]." (citations omitted)); *Family Tree Farms, LLC v. Alfa*

15

*Quality Produce, Inc.*, No. 1:08–cv–00481–AWI–SMS, 2009 WL 565568, at \*10 (E.D. Cal. Mar. 5, 2009) ("Marshal's fees and fees for service by a person other than the Marshal under [Federal Rule of Civil Procedure] may be recovered; private process servers' fees are properly taxed as costs." (citing *Alflex Corp. v. Underwriters Labs., Inc.*, 914 F.2d 175, 178 (9th Cir. 1990))).

**IV.        RECOMMENDATION**

Based on consideration of the declarations, pleadings, and exhibits to the present motion, it is HEREBY ORDERED that the hearing on Plaintiff's motion for default judgment, (Doc. 14), set for February 18. 2026, is VACATED.

Further, the undersigned RECOMMENDS that the Court:

1.      GRANT IN PART Plaintiff's motion for default judgment (Doc. 14), insofar as Plaintiff requests that the Court enter default judgment against Defendants K&M Transport, LLC and Melvyn Martinez as to counts one and two of the First Amended Complaint only;

2.      Enter judgment against Defendants K&M Transport, LLC and Melvyn Martinez in the amount of $167,722.01, plus additional interest being awarded at the rate of $78.57 per day after September 26, 2025;

3.      Award attorney's fees to Plaintiff in the amount of $2,535; and

4.      Award costs to Plaintiff in the amount of $596.74.

Furthermore, Plaintiff is HEREBY ORDERED to mail a copy of these findings and recommendations to each of the defendants at the defendant's last known address.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. **Within twenty-one (21) days of service** of these findings and recommendations, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. *Wilkerson v. Wheeler*, 772 F.3d 834,

839 (9th Cir. 2014).

IT IS SO ORDERED.

Dated:   **February 3, 2026**                           /s/ *Sheila K. Oberto*
UNITED STATES MAGISTRATE JUDGE